UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                      PLAINTIFF

v.                                                                           CRIMINAL ACTION NO. 3:06CR-98-S

JAMES TERRY MOORE                                                                          DEFENDANT

*ELECTRONICALLY FILED*

**SENTENCING MEMORANDUM**

Comes the United States of America, through counsel, Jo E. Lawless, and files its memorandum in support of sentencing in this action currently scheduled for January 5, 2007..

I. Factual Background

A Special Agent in the Buffalo Field Division of the Federal Bureau of Investigation initiated the investigation which ultimately led to the arrest and instant prosecution of James Terry Moore. The Special Agent conducted his entire investigation outside of the states of Ohio and Kentucky. The Special Agent is authorized and assigned to conduct online undercover investigations of child pornography distribution.

On March 8 and 9, 2006, the Special Agent, while working in an undercover capacity, signed on to Internet Relay Chat, using mIRC, *via* an Internet connected computer from the Buffalo Field Office of the FBI. The agent used mIRC to monitor chat channels in which people advertise access to their computers containing child pornography. On March 9, 2006, the Special Agent encountered mIRC name BRAINSTORM06 advertising in the chat channels #100%PreTeenGirlSexfiles and #100%preteengirlsexmovies. The advertisement stated "Serving: Hi come and see the good videos

and pictuers [sic] that are in my server, Please upload only PreTeen videos and Pictures!!! To gain access type: !DogStar Initial credit: 10000 Ratio: 1/1 Total of 3416 files (3.7 GB) [0 of 2 slots in use] »¡« Scøøp Script »!«". The agent entered the file server advertised by BRAINSTORM06 using the trigger (or password/access code) "!DogStar." Once connected with the file server, the agent viewed the contents of the files available for download, uploaded corrupted files (to gain the requisite credit to download files), and downloaded files with titles consistent with child pornography. The agent noted that the rules section of the f-serve contained the following statement:

>     No Boys
>     No Men
>     No Girls Over 14 Years Of Age
>     No Cartoons
>     No Clothes unless in panties are swimsuits
>     No renamed Pictures Are Videos
>     No Videos under 4.MB
>     -------------------------------------------
>     Please Enjoy And Follow The Rules Because
>     I will Ban And There Is No Second Chances!!
>     I am Watching!!!!!!!!!

The agent then downloaded at least 27 child pornographic images. At least two of the files downloaded by the agent included images of known child pornography. In other words, a child or children had been previously identified through law enforcement efforts in other investigations. Additionally, the IP address from the sending computer was the same for the images. One of the files is a digital movie file. The approximately ten-second video depicts a prepubescent child being anally penetrated by an adult man's penis. Another file downloaded by the agent involved an approximately 16-second video showing a prepubescent girl being anally penetrated by an adult man's penis.

On March 10, 2006, a different agent with the FBI sent an administrative subpoena for

information regarding the IP referenced above for the dates and times observed by the Buffalo, New York FBI agent. The subpoena returned from the internet service provider indicated the subscriber was a man with an address in Cincinnati, Ohio. The internet service provider also gave the subscriber's telephone number and indicated that the account provided high speed digital subscriber line (DSL) Internet access.

An FBI agent in Cincinnati, Ohio checked Hamilton County, Ohio, property records and gathered additional information. On June 4, 2006, the Cincinnati Special Agent observed and confirmed that the image of the Cincinnati Premises contained in Hamilton County, Ohio, property records fairly and accurately depicted the address previously obtained from the internet service provider. The investigating agent photographed the premises with a digital camera. Parked in the driveway of the Cincinnati Premises was a white Ford Aerostar minivan bearing an Ohio license plate. A check of Ohio Bureau of Motor Vehicles records revealed that the vehicle was registered to the same person identified by the internet service provider as the individual for whom the IP address was assigned.

Based on the facts set out above, the agent applied for a federal search warrant for the Cincinnati premises. On June 14, 2006, United States Magistrate Judge Timothy S. Black issued a federal search warrant for a search of the Cincinnati premises for evidence of transmission of child pornography in violation of 18 U.S.C. § 2252A.

On June 20, 2006, law enforcement officials executed the federal search warrant on the Cincinnati premises. No one was home at the time of execution. Cincinnati agents seized computer equipment from the Cincinnati premises. At the Cincinnati premises, an FBI agent observed a computer network in place using a hub to provide network, and thus internet connectivity. In the

upstairs of the Cincinnati premises, SA Klain observed a list, tacked to a bulletin board, of logins and passwords for various computer functions. Neither the name BRAINSTORM06 nor the trigger !DogStar were on the list.

During and after the execution of the search the Cincinnati FBI agent contacted the home owner by telephone. The home owner reported that he was an over-the-road truck driver, was driving his truck, and would not return to Cincinnati for several days. The agent interviewed the man over the telephone. The home owner indicated that he had never heard of BRAINSTORM06 and denied having child pornography on his computers. He did, however, indicate that his friend, James Terry Moore, had resided at the Cincinnati premises from March 5-14, 2006. The man stated that Moore had brought a computer with him when he came to stay at the Cincinnati premises. Moore connected his computer to the home owner's network and was then able to access the internet, as well as run a file server, also known as an "f-serve." The computer that Moore brought was a desktop computer. The home owner reported that Moore was a registered sexual offender who had committed statutory rape in Tennessee. The home owner also reported that Moore had been convicted for failing to comply with sex offender registration requirements.

The Cincinnati FBI agent ordered checks of Moore's criminal history. Moore's criminal history showed 13 felony arrests and 5 felony convictions. The agent determined that Moore was registered as a convicted sex offender with a reported address in Louisville, Kentucky. Moore's criminal history showed that, among other things, he had been arrested on April 29, 1988, for gross sexual imposition felony by the Cincinnati Police Department. Moore was convicted of this charge and sentenced to two years' confinement. Moore was also arrested for statutory rape by the Shelbyville, Tennessee, Police Department on September 8, 1998. Records indicated a sentence of

4

two years and six months of this offense. On February 27, 2002, Moore was arrested for a probation violation for failing to register as a sex offender in Kentucky.

In a conversation with another FBI agent in Cincinnati, the home owner described a visit he made in June 2006, to Moore's residence. He gave specific details about the residence and described two computers in the apartment. The home owner stated that the hard drives he observed in Moore's residence were the same ones Moore had brought with him to Ohio in March 2006.

On June 20, 2006, a Louisville FBI agent visited the Tanglewood Apartments in Louisville, Kentucky and interviewed the property manager for the facility. The property manager confirmed that Moore lived in one of the apartments. She also confirmed that two other adults (a male and female) lived in the apartment with Moore. The property manager advised that she had recently learned that both men (including Moore), are registered sex offenders. Neither man indicated a prior felony conviction on their respective housing applications kept on file at Tanglewood. During the visit to Tanglewood, the FBI Special Agent confirmed the visual description of the complex as provided by the Cincinnati home owner. Additionally, the agent reviewed floor-plan information for the units, as provided by the leasing office. The floor-plan information corroborated the lay-out previously described by Cincinnati home owner.

On June 21, 2006, United States Magistrate Judge Dave Whalin issued a federal search warrant for Moore's residence. That same day, federal agents executed the search warrant. Agents seized computers from the residence. During entry of Moore's residence, agents witnessed files being downloaded to and uploaded from Moore's computer which was connected from the Internet. Moore agreed to speak with interviewing agents and admitted that his computer was currently uploading and downloading child pornography.

During the interview, a Louisville FBI Special Agent showed approximately 23 images containing child pornography to Moore. The 23 images had been downloaded from Moore's computer by Buffalo, New York, agent during the undercover operation. Moore admitted that the images had been or were currently on his computer. He signed and dated the images.

Moore also confessed that during his trip to Ohio his computer had been running the f-serve. He stated that the f-serve had approximately 7,000-8,000 images of child pornography. Moore also stated that approximately 5,000 of the images showed children under the age of 12 engaged in sexual activity, including bondage. Agents made a probable cause felony arrest of Moore.

Subsequent forensic examination of Moore's computers revealed numerous images of children engaged in sexually explicit conduct, including video files and still images. The images retrieved from Moore's computer also included at least 30 files showing children who had previously identified through the Child Victim Identification Project (CVIP) through the National Center for Missing and Exploited Children (NCMEC). The CVIP images include still images of young girls (preschool age) being vaginally penetrated by adult male penises.

One video file, lasting approximately one minute and 42 seconds, bears a title suggesting the rape of a three-year-old child. The video, in fact, shows an adult male penis vaginally penetrating a very young little girl. One still image shows a little girl (approximately age 6), wearing a dog collar lying on her back on a bed while crying with her arm across her eyes as an adult man vaginally penetrates her. The title of the file suggests that it is the child's father raping her. Another still image shows the vaginal area of a baby girl - approximately toddler age - with a diaper beneath her. The baby's legs are spread apart and the photograph focuses on her genital area. Other still images show sexual activity ranging from young girls performing oral sex on adult men, to men

digitally penetrating babies' vaginas, and vaginal penetration of young girls (including toddlers) by adult male penises. A computer diskette containing the images described above, and others, will be provided to the Court on January 3, 2007, for *in camera* review.

## II. Crimes of Conviction

On July 11, 2006, a federal grand jury sitting in Louisville returned a five-count Indictment against Moore. Count 1 charged Moore with advertising child pornography, in violation of 18 U.S.C. §§ 2251(d)(1)(A), (d)(1)(B), and (e). Count 2 charged Moore with possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Count 3 charged Moore with distributing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). Count 4 charged Moore with receiving child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). Count 5 sought forfeiture of certain computer items and materials relating to child pornography.

Moore pled guilty to all substantive charges on September 15, 2006. He did so without benefit of a plea agreement. At all stages of proceedings in this action, the Court advised Moore that he faced the potential of a life sentence. However, Moore has not previously been advised of the mandatory life sentence set out in 18 U.S.C. § 3559(e).

## III. Guidelines Calculations

In *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006), the Sixth Circuit "join[ed] several sister circuits in crediting sentences properly calculated under the Guidelines with a rebuttable presumption of reasonableness." The United States offers the following calculations

regarding application of the Sentencing Guidelines to this action:

**Advertising** - 18 U.S.C. §§ 2251(d)(1)(A), (d)(1)(B), and (e)

| | | |
|---|---|---|
| Base offense level: | 32 | § 2G2.1(a) |
| Specific characteristics: | + 4 | § 2G2.1(b)(1) - minor under 12 |
| | + 2 | § 2G2.1(b)(3) - distribution |
| | + 4 | § 2G2.1(b)(4) - sadistic or masochistic |
| Combined offense level: | 42 | |
| | - 3 | § 3E1.1(a) and (b) - acceptance of responsibility |
| Total offense level: | 39 | |

The Commentary following U.S.S.G. § 2G2.1, includes reference to the Statutory Provisions covered by the Guidelines' section. The Commentary provides that § 2G2.1 covers violations of 18 U.S.C. § 2251. Appendix A to the Guidelines Manual does not address 18 U.S.C. § 2251(d). Appendix A does, however, provide an index for certain violations of 18 U.S.C. § 2251. For example, violations of 2251(a), (b), and (c)(1)(B) are indexed to § 2G2.1 while a violation of 2251(c)(1)(A) indexes to § 2G2.2. In light of the Statutory Provisions section of the Commentary for § 2G2.1, and in the absence of any indexing or guidance to the contrary, § 2G2.1 should be applied to the conviction for violating 18 U.S.C. § 2251(d).

**Receipt/Distribution/Possession** - 18 U.S.C. §§ 2252A(a)(2), (a)(5)(B), (b)(1), and (b)(2)

| | | |
|---|---|---|
| Base offense level: | 22 | § 2G2.2(a)(2) |
| Specific characteristics: | + 2 | § 2G2.2(b)(2) - prepubescent minor |
| | + 5 | § 2G2.2(b)(3) - dist. exchange thing of value |
| | + 4 | § 2G2.2(b)(4) - sadistic or masochistic |
| | + 5 | § 2G2.2(b)(5) - pattern of activity |
| | + 2 | § 2G2.2(b)(6) - use of computer |
| | + 5 | § 2G2.2(b)(7)(D) - # images - > 600 |
| Combined offense level: | 45 | |
| | - 3 | § 3E1.1(a) and (b) - acceptance of responsibility |
| Total offense level: | 42 | |

Grouping (§ 3D1.4)

The advertising offense covered by § 2G2.1 does not group with the receipt, distribution, and possession offenses covered by § 2G2.2. *See* U.S.S.G. § 3D1.2. Therefore, § 3D1.4 should be applied to determined the combined offense level.

>   Highest offense level          42
>                                  + 2 units
>
>   Resulting offense level        44
>
>   Criminal History               VI
>
>   Penalty range: Life incarceration

Given Moore's guilty plea to the advertising count (*i.e.*, the offense arising under 18 U.S.C. § 2251), Moore faces at least a statutory 15-year mandatory minimum sentence. *See* 18 U.S.C. § 2251(e).[1] However, if a defendant has one prior conviction relating to the sexual exploitation of children, the penalty provision of § 2251 requires imposition of a 25-year minimum term of imprisonment. *Id*. If a defendant has two or more prior convictions, the mandatory minimum term of imprisonment increases to 35 years. *Id*. Moreover, 18 U.S.C. § 3559(e) carries a mandatory life sentence under certain circumstances at issue in the case at bar. "A person who is convicted of a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim, unless the sentence of death is imposed." 18 U.S.C. § 3559(e).[2]

---

[1] The most recent amendment to 18 U.S.C. § 2251 occurred on April 30, 2003.

[2] The most recent amendment to 18 U.S.C. § 3559 occurred on December 23, 2004. However, the particular provision at issue in the case at bar, § 3559(e), resulted from the amendment on April 30, 2003, *via* the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003, "PROTECT Act."

9

The convictions for receiving and distributing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(b)(1), carry mandatory minimum terms of imprisonment of 5 years. However, in light of Moore's prior child sex convictions, the mandatory minimum term of imprisonment increases to 15 years. *See* 18 U.S.C. § 2252A(b)(1). Finally, The conviction for possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), carries a maximum prison term of 10 years.

Moore faces a potential maximum fine of $1,000,000 ($250,000 per count). The Court may impose supervised release for any number of years, up to and including life.

## IV.  Criminal History

The United States concurs with the criminal history calculation prepared by the United States Probation Office.

## V..  18 U.S.C. § 3553(a) Factors

The total offense level (with the full adjustment for acceptance of responsibility) should be 44. The Criminal History Category is VI. The advisory guideline range, therefore, is life imprisonment. Given the presumption of reasonableness attendant to the sentencing range provided for by application of the Sentencing Guidelines, this Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). For the reasons that follow, a life sentence meets the statutory sentencing objectives of § 3553(a) as well as the mandated sentence contemplated in 18 U.S.C. § 3559(e).

Moore stands convicted of serious child exploitation offenses, including advertising the

exchange of specifically defined child pornography, receiving, distributing, and possessing child pornography. Moreover, he has a well-documented history of acting upon his sexual interest in children. Moore's criminal record shows his first felony child sex conviction in 1988. Moore, 23-years-old at the time, pleaded guilty to having sexual contact with a female child under the age of 13. At age 25, Moore again pleaded guilty to engaging in vaginal intercourse with a female child under the age of 13 on two separate occasions. Moore compelled the child to engage in the activity through force or threat of force. In 1998, at the age of 32, Moore pleaded guilty to two counts of statutory rape. On two separate occasions, Moore engaged in sexual penetration of a 16-year-old girl.

After sustaining the three convictions set out above, Moore failed to comply with sex offender registration requirements. He pleaded guilty to the charge in 2002. He served out the sentence imposed for the failure to register conviction in April 2005. Additionally, Moore pleaded guilty to distributing matter portraying the sexual performance by a minor in Boone County in 2003.

The sentence imposed in this action should be substantial in order to adequately reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, deter further criminal conduct, protect the public from further crimes of the defendant, and provide Moore with needed correctional treatment. A sentence of life imprisonment meets several of the sentencing factors. In consideration of Moore's long-standing criminal conduct regarding the sexual exploitation of children, a life sentence adequate reflects the seriousness of the current offenses and provides just punishment. A life sentence promotes respect for the law and gives clear notice that repeat child sexual offenders will be punished harshly. Given the pattern for repeat criminal offending (particularly involving the sexual exploitation of children), a life sentence is the only way

to truly protect the public from further crimes. In light of a life sentence, correctional treatment is not a significant factor. Nevertheless, the Bureau of Prisons offers sex offender management programs. Moore will have an opportunity to participate in the those programs during his incarceration.

The United States respectfully requests the Court to apply the Sentencing Guidelines, as outlined above, follow the statutory directives set out in 18 U.S.C. § 3559(e), and impose a sentence of life imprisonment.

Respectfully submitted,

DAVID L. HUBER
United States Attorney

/s/ *Jo E. Lawless*
Jo E. Lawless
Assistant United States Attorney
510 West Broadway, 10th Floor
Louisville, Kentucky 40202
(502) 625-7065
Fax (502) 582-5097

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by electronic means through the Court's ECF system on January 3, 2007, to Jamie L. Haworth.

/s/ *Jo E. Lawless*
Jo E. Lawless
Assistant United States Attorney