UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL ACTION NO.  3:06CR-98-S |
| JAMES TERRY MOORE | DEFENDANT |

*ELECTRONICALLY FILED*

**UNITED STATES' BRIEF REGARDING ENHANCED SENTENCING**

Comes the United States of America, through counsel, Jo E. Lawless, Assistant United States Attorney, and files its brief on the issue of enhanced sentencing.

I.  Factual Background

A Special Agent in the Buffalo Field Division of the Federal Bureau of Investigation initiated the investigation which ultimately led to the arrest and instant prosecution of James Terry Moore. The Special Agent conducted his entire investigation outside of the states of Ohio and Kentucky. The Special Agent is authorized and assigned to conduct online undercover investigations of child pornography distribution.

On March 8 and 9, 2006, the Special Agent, while working in an undercover capacity, signed onto Internet Relay Chat, using mIRC, *via* an Internet connected computer from the Buffalo Field Office of the FBI.  The agent used mIRC to monitor chat channels in which people advertise access to their computers containing child pornography.  On March 9, 2006, the Special Agent encountered mIRC name BRAINSTORM06 advertising in the chat channels #100%PreTeenGirlSexfiles and #100%preteengirlsexmovies.  The advertisement stated "Serving: Hi come and see the good videos

and pictuers [sic] that are in my server, Please upload only PreTeen videos and Pictures!!! To gain access type: !DogStar Initial credit: 10000 Ratio: 1/1 Total of 3416 files (3.7 GB) [0 of 2 slots in use] »¡« Scøøp Script »!«". The agent entered the file server advertised by BRAINSTORM06 using the trigger (or password/access code) "!DogStar." Once connected with the file server, the agent viewed the contents of the files available for download, uploaded corrupted files (to gain the requisite credit to download files), and downloaded files with titles consistent with child pornography. The agent noted that the rules section of the f-serve contained the following statement:

> No Boys
> No Men
> No Girls Over 14 Years Of Age
> No Cartoons
> No Clothes unless in panties are swimsuits
> No renamed Pictures Are Videos
> No Videos under 4.MB
> -------------------------------------------
> Please Enjoy And Follow The Rules Because
> I will Ban And There Is No Second Chances!!
> I am Watching!!!!!!!!!

The agent then downloaded at least 27 child pornographic images. At least two of the files downloaded by the agent included images of known child pornography. In other words, a child or children had been previously identified through law enforcement efforts in other investigations. Additionally, the IP address from the sending computer was the same for the images. One of the files is a digital movie file. The approximately ten-second video depicts a prepubescent child being anally penetrated by an adult man's penis. Another file downloaded by the agent involved an approximately 16-second video showing a prepubescent girl being anally penetrated by an adult man's penis.

On March 10, 2006, a different agent with the FBI sent an administrative subpoena for

information regarding the IP referenced above for the dates and times observed by the Buffalo, New York FBI agent. The subpoena returned from the internet service provider indicated the subscriber was a man with an address in Cincinnati, Ohio. The internet service provider also gave the subscriber's telephone number and indicated that the account provided high speed digital subscriber line (DSL) Internet access.

An FBI agent in Cincinnati, Ohio checked Hamilton County, Ohio, property records and gathered additional information. On June 4, 2006, the Cincinnati Special Agent observed and confirmed that the image of the Cincinnati Premises contained in Hamilton County, Ohio, property records fairly and accurately depicted the address previously obtained from the internet service provider. The investigating agent photographed the premises with a digital camera. Parked in the driveway of the Cincinnati Premises was a white Ford Aerostar minivan bearing an Ohio license plate. A check of Ohio Bureau of Motor Vehicles records revealed that the vehicle was registered to the same person identified by the internet service provider as the individual for whom the IP address was assigned.

Based on the facts set out above, the agent applied for a federal search warrant for the Cincinnati premises. On June 14, 2006, United States Magistrate Judge Timothy S. Black issued a federal search warrant for a search of the Cincinnati premises for evidence of transmission of child pornography in violation of 18 U.S.C. § 2252A.

On June 20, 2006, law enforcement officials executed the federal search warrant on the Cincinnati premises. No one was home at the time of execution. Cincinnati agents seized computer equipment from the Cincinnati premises. At the Cincinnati premises, an FBI agent observed a computer network in place using a hub to provide network, and thus internet connectivity. In the

upstairs of the Cincinnati premises, SA Klain observed a list, tacked to a bulletin board, of logins and passwords for various computer functions. Neither the name BRAINSTORM06 nor the trigger !DogStar were on the list.

During and after the execution of the search the Cincinnati FBI agent contacted the home owner by telephone. The home owner reported that he was an over-the-road truck driver, was driving his truck, and would not return to Cincinnati for several days. The agent interviewed the man over the telephone. The home owner indicated that he had never heard of BRAINSTORM06 and denied having child pornography on his computers. He did, however, indicate that his friend, James Terry Moore, had resided at the Cincinnati premises from March 5-14, 2006. The man stated that Moore had brought a computer with him when he came to stay at the Cincinnati premises. Moore connected his computer to the home owner's network and was then able to access the internet, as well as run a file server, also known as an "f-serve." The computer that Moore brought was a desktop computer. The home owner reported that Moore was a registered sexual offender who had committed statutory rape in Tennessee. The home owner also reported that Moore had been convicted for failing to comply with sex offender registration requirements.

The Cincinnati FBI agent ordered checks of Moore's criminal history. Moore's criminal history showed 13 felony arrests and 5 felony convictions. The agent determined that Moore was registered as a convicted sex offender with a reported address in Louisville, Kentucky. Moore's criminal history showed that, among other things, he had been arrested on April 29, 1988, for gross sexual imposition felony by the Cincinnati Police Department. Moore was convicted of this charge and sentenced to two years' confinement. Moore was also arrested for statutory rape by the Shelbyville, Tennessee, Police Department on September 8, 1998. Records indicated a sentence of

4

two years and six months of this offense. On February 27, 2002, Moore was arrested for a probation violation for failing to register as a sex offender in Kentucky.

In a conversation with another FBI agent in Cincinnati, the home owner described a visit he made in June 2006, to Moore's residence. He gave specific details about the residence and described two computers in the apartment. The home owner stated that the hard drives he observed in Moore's residence were the same ones Moore had brought with him to Ohio in March 2006.

On June 20, 2006, a Louisville FBI agent visited the Tanglewood Apartments in Louisville, Kentucky and interviewed the property manager for the facility. The property manager confirmed that Moore lived in one of the apartments. She also confirmed that two other adults (a male and female) lived in the apartment with Moore. The property manager advised that she had recently learned that both men (including Moore), are registered sex offenders. Neither man indicated a prior felony conviction on their respective housing applications kept on file at Tanglewood. During the visit to Tanglewood, the FBI Special Agent confirmed the visual description of the complex as provided by the Cincinnati home owner. Additionally, the agent reviewed floor-plan information for the units, as provided by the leasing office. The floor-plan information corroborated the lay-out previously described by Cincinnati home owner.

On June 21, 2006, United States Magistrate Judge Dave Whalin issued a federal search warrant for Moore's residence. That same day, federal agents executed the search warrant. Agents seized computers from the residence. During entry of Moore's residence, agents witnessed files being downloaded to and uploaded from Moore's computer which was connected from the Internet. Moore agreed to speak with interviewing agents and admitted that his computer was currently uploading and downloading child pornography.

During the interview, a Louisville FBI Special Agent showed approximately 23 images containing child pornography to Moore. The 23 images had been downloaded from Moore's computer by Buffalo, New York, agent during the undercover operation. Moore admitted that the images had been or were currently on his computer. He signed and dated the images.

Moore also confessed that during his trip to Ohio his computer had been running the f-serve. He stated that the f-serve had approximately 7,000-8,000 images of child pornography. Moore also stated that approximately 5,000 of the images showed children under the age of 12 engaged in sexual activity, including bondage. Agents made a probable cause felony arrest of Moore.

Subsequent forensic examination of Moore's computers revealed numerous images of children engaged in sexually explicit conduct, including video files and still images. The images retrieved from Moore's computer also included at least 30 files showing children who had previously identified through the Child Victim Identification Project (CVIP) through the National Center for Missing and Exploited Children (NCMEC). The CVIP images include still images of young girls (preschool age) being vaginally penetrated by adult male penises.

## II.  Charges and Procedural History

On July 11, 2006, a federal grand jury sitting in Louisville returned a five-count Indictment against Moore. Count 1 charged Moore with advertising child pornography, in violation of 18 U.S.C. §§ 2251(d)(1)(A), (d)(1)(B), and (e). Count 2 charged Moore with possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Count 3 charged Moore with distributing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). Count 4 charged Moore with receiving child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). Count 5 sought forfeiture of certain computer items and materials relating to child

pornography.

Moore pled guilty to all substantive charges on September 15, 2006. He did so without benefit of a plea agreement. At all stages of proceedings in this action, the Court advised Moore that he faced the potential of a life sentence as provided for in 18 U.S.C. § 2251(e). However, Moore has not previously been advised of the mandatory life sentence set out in 18 U.S.C. § 3559(e).

### III.  Statutory sentencing scheme

Moore, due to his prior child sex convictions, faces enhanced statutory mandatory sentencing, particularly with regard to the 18 U.S.C. § 2251(d) offense of advertising. At issue is whether the mandatory life sentence provided for in 18 U.S.C. § 3559(e) or the 35 year - life range as contemplated in 18 U.S.C. § 2251(e) should be applied in the case at bar. For the reasons that follow, the plain language of 18 U.S.C. § 3559(e) requires application in this case.

Moore's criminal history significantly affects the statutory sentencing scheme. A review of his criminal history reveals three prior felony convictions for contact offenses with children. In 1988, Moore pled guilty to the felony charge of gross sexual imposition with a child under age 13. The charge originated in Hamilton County, Ohio. Court records reflect that Moore, an adult, had sexual contact with a female under the age of 13. Three years later, on or about November 25, 1991, Moore pled guilty to two separate counts of gross sexual imposition. The case arose in Hamilton County, Ohio. Court records reflect that in June 1991 Moore had vaginal intercourse with a female child under age 13. Court records also indicated that Moore compelled the child to submit by force or threat of force. The second count of gross sexual imposition involved the same child and sexual contact by Moore on a separate date. On or about December 14, 1998, Moore pled guilty to two counts of statutory rape in Bedford County, Tennessee. Court records reflect that on two separate

occasions in August 1998 (when Moore was 32), he engaged in the sexual penetration of a 16-year-old girl.  In May 2002, Moore pled guilty to failing to comply with sex offender registry requirements in Boone County, Kentucky.  Finally, on or about January 14, 2003, Moore pled guilty to distributing matter portraying the sexual performance by a minor (*i.e.*, child pornography).

Given Moore's guilty plea to the advertising count (*i.e.*, the offense arising under 18 U.S.C. § 2251), Moore faces certain statutory mandatory minimum sentencing.  *See* 18 U.S.C. §§ 2251(e)[1] and 3559(e).  The penalty provision of § 2251 provides, in pertinent part, as follows:

> Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction under this chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 25 years nor more than 50 years, but if such person has 2 or more prior convictions under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned not less than 35 years nor more than life. . . .

18 U.S.C. § 2251(e).  An examination of the § 2251(e) language reveals that enhanced penalties should be applied if a defendant violates § 2251 and if that person has a prior conviction or convictions for certain offenses, including child pornography.

By contrast, 18 U.S.C. § 3559(e) requires imposition of a mandatory life sentence under certain circumstances.  "A person who is convicted of a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a

---

[1]The most recent amendment to 18 U.S.C. § 2251 occurred on April 30, 2003.

8

minor was the victim, unless the sentence of death is imposed." 18 U.S.C. § 3559(e).[2]  The term "Federal sex offense" is defined and includes 18 U.S.C. § 2251. *See* 18 U.S.C. § 3559(e)(2)(A). Similarly, the term "prior sex conviction" is defined. *See* 18 U.S.C. § 3559(e)(2)(C). The statute provides that "the term 'prior sex conviction' means a conviction for which the sentence was imposed before the conduct occurred constituting the subsequent Federal sex offense, and which was for a Federal sex offense or a State sex offense." *Id*.

The starting point for statutory construction is the language of the statute itself. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002). "The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Id*. (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)(citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989)). The inquiry ends "if the statutory language is unambiguous and ' the statutory scheme is coherent and consistent.'" 534 U.S. at 450 (quoting *Robinson*, 519 U.S. at 340). A plain reading of 18 U.S.C. §§ 2251(e) and 3559(e) reveals that the statutes are unambiguous. This Court, therefore, should give the statutes their plain meaning and apply them accordingly.

While there may be some overlap between the two statutes, there are distinct differences. For example, § 2251(e) refers to a "prior conviction" as the triggering event for enhanced penalties. By contrast, § 3559(e) requires that a person have a "prior conviction <u>for which the sentence was imposed before</u> the conduct occurred constituting the subsequent Federal sex offense . . . "

---

[2] The most recent amendment to 18 U.S.C. § 3559 occurred on December 23, 2004. However, the particular provision at issue in the case at bar, § 3559(e), resulted from the amendment on April 30, 2003, *via* the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003, "PROTECT Act."

9

(Emphasis added). Additionally, § 2251(e) includes a broader base of qualifying prior convictions – such as the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography – than § 3559(e). Under the specific terms of § 3559(e), only prior convictions that qualify as Federal sex offenses or State sex offenses may be used to trigger the mandatory life sentence. The terms "Federal sex offense" and "State sex offense" are defined within the statute. *See* 18 U.S.C. §§ 3559(e)(2)(A) and (B). Of note, 18 U.S.C. § 3559(e)(3) also carves out certain non-qualifying felonies.

In the context of this case, if Moore's prior convictions had related strictly to the receipt or distribution of child pornography (such as his 2003 Boone County convcition) , he would not be subject to the mandatory life sentence set out in § 3559(e). Rather, under those circumstances, he would face the mandatory minimum sentence of 35 years as set out in § 2251(e). However, as noted above, Moore has three prior State sex offense convictions which qualify him for the mandatory sentence in 18 U.S.C. § 3559(e). The sentences were imposed for each offense prior to the conduct giving rise to the advertising charge in this case – the qualifying Federal sex offense. The mandatory life provision of 18 U.S.C. § 3559(e) should be applied in this case.

There is no conflict between 18 U.S.C. § 2251(e) and § 3559(e). The statutes are clear. Thus, there is no need to go behind the statutes and examine congressional intent. Both statutes were amended through enactment of the PROTECT Act. The congressional record relating to the PROTECT Act reveals the following:

> This bill also contains a variety of other measures designed to increase jail sentences in cases where children are victimized by sexual predators. First, it enhances penalties for repeat offenders of child sex offenses by expanding the predicate crimes which trigger tough, mandatory minimum sentences. . . . These are all strong measures designed to protect children and increase prison sentences for child

> molesters and those who otherwise exploit children.
>
> . . .
>
> The PROTECT Act also toughens existing penalties for offenders. Not only does it broaden the category of repeat offenders subject to more stringent criminal sentences, but it also calls on the U.S. Sentencing Commission to review the appalling low sentences that currently apply to offenders who travel across state lines in order to have sex with children.

149 Cong. Rec. S2573-02. There is little doubt as to the intent of Congress when it passed the PROTECT Act and created the enhanced statutory mandatory sentencing measures at issue in this case.

### IV. Conclusion

The statutes are clear. Moore is the precise type of child sex offender Congress targeted with the enhanced sentencing provisions in both 18 U.S.C. §§ 2251(e) and 3559(e). A plain reading of § 3559(e) reveals that all of the prerequisites for application are met by the facts and circumstances of this case. Moore's current criminal conduct and past criminal convictions place him squarely within the parameters of the mandatory life sentence provided for in 18 U.S.C. § 3559(e). This Court should apply the statute as written and impose a life sentence.

Respectfully submitted,

DAVID L. HUBER
United States Attorney

/s/ *Jo E. Lawless*
Jo E. Lawless
Assistant United States Attorney
510 West Broadway, 10th Floor
Louisville, Kentucky 40202
(502) 625-7065
Fax (502) 582-5097

11

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was sent by electronic means through the Court's ECF system on June 26, 2007, to Jamie L. Haworth.

                                             /s/ *Jo E. Lawless*
                                             Jo E. Lawless
                                             Assistant United States Attorney